

ENTERED
06/06/2019

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **PHUNG TAN HUYNH; dba BARTER** | § | **CASE NO: 17-36801** |
| **RESOURCES; dba HUNYNH** | § | |
| **INVESTMENT** | § | |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |

**MEMORANDUM OPINION**
**OVERRULING BELTERRA RESORT INDIANA, LLC'S OBJECTION**
**TO DEBTOR'S CLAIMED HOMESTEAD EXEMPTION**
*Resolving ECF No. 20*

## I.  INTRODUCTION

"Even before the ink had dried on the joint resolution of Congress that admitted Texas as the twenty-eighth state in the Union, Texas citizens enjoyed broad homestead rights.  Not much has changed in the last 145 or so years."[1]  Although those are the Fifth Circuit's words in 1992, they still ring true today.  Pending before the Court is "Creditor's Objection to Debtor's Claimed Exemption in 12311 Field Brook Court, Houston, Texas 77089" ("*Objection*") filed by Belterra Resort Indiana, LLC ("*Belterra*") on May 17, 2018.[2]  Phung Tan Huynh ("*Debtor*") filed a response to the Objection  on June 2, 2018.[3]  On September 17, 2018, the Court conducted a one-day evidentiary hearing regarding Belterra's Objection.   After considering the pleadings, arguments, evidence in the record, and applicable law, the Court now issues its Memorandum Opinion.

## II.  FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to FED.

---

[1] *Bradley v. Pac. Sw. Bank (In re Bradley)*, 960 F.2d 502, 505 (5th Cir.1992).
[2] ECF No. 20.
[3] ECF No. 22.

R. BANKR. P. 7052, which incorporates FED. R. CIV. P. 52. Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of fact should be so considered.

The long and tortured history between Debtor and Belterra spans over a period of at least seven years, over several venues and involving several parties. At the center of the dispute is real property located at 12311 Field Brook Ct., Houston, Texas 77089 (the "*Field Brook Property*"), which is described as: "LOT THREE (3), BLOCK TWO (2), OF COLLEGE PLACE, SECTION THREE (3) ACCORDING TO THE PLAT RECORDED IN THE MAP RECORDS OF HARRIS COUNTY, TEXAS," which was transferred to Debtor's brother, John Huynh ("*John*"), by Debtor via special warranty deed on January 19, 2012.[4]

On May 14, 2012, the saga between Debtor and this creditor began with Belterra initiating a law suit against Debtor in Indiana state court for the collection of unpaid debt on a line of credit.[5] On June 25, 2012, Belterra successfully obtained a $776,000 monetary judgement against Debtor, and on October 30, 2012, Belterra filed a petition to enforce that judgment in the 215th Judicial District Court in Harris County, Texas.[6] On June 24, 2013, the 215th Judicial District Court appointed David Fettner ("*Fettner*") as receiver on behalf of Belterra to take possession of all of Debtor's non-exempt property in order to satisfy Belterra's judgment.[7]

On May 21, 2015, Fettner filed his First Amended Petition against John in the 55th Judicial District Court in Harris County, Texas, (the *"Huynh Suit"*) in order to, inter alia, recover Debtor's non-exempt assets.[8] The uncontroverted allegations raised in the Huynh Suit were that

---

[4] Belterra's Ex. 1.
[5] Belterra's Ex. 6.
[6] Belterra's Ex. 7.
[7] Belterra's Ex. 8.
[8] Belterra's Ex. 9.

on January 19, 2012, and around 180 days before judgement was taken, Debtor, with the intent to hinder or delay Belterra, transferred, inter alia, the Field Brook Property to his brother John via special warranty deed. [9]

On May 25, 2016, the 55th Judicial District Court granted Fettner summary judgment against John,[10] and appointed Fettner receiver over John's assets, excluding however, the Field Brook Property ("*55th District Court Order*").[11]   "The court [was] considering whether such property should be under the control of [Fettner]."[12]  After entry of the 55th District Court Order, John attempted to quitclaim the Field Brook Property back to Debtor.  But the 55th Judicial District Court voided that quitclaim deed and found that:

      i.     the Field Brook Property was fraudulently transferred to John;

     ii.     the Field Brook Property was non-exempt as to John;

   iii.     the Field Brook Property is an asset of the Receivership to be held in *custodia legis*; and

   iv.     no homestead designation by John could save it from execution by Receiver.[13]

The court further ordered that Field Brook was an asset of the receivership, and Fettner was granted authority to sell the Field Brook Property.[14]

On December 20, 2017, and before the Field Brook Property could be sold, Debtor filed a voluntary petition for relief under Chapter 7, Title 11 of the United States Bankruptcy Code. [15] And within Debtor's Chapter 7 schedules, Debtor elected Texas state exemptions as allowed

---

[9] Belterra's Ex. 1.
[10] Belterra's Ex. 12.
[11] Belterra's Exs. 13, 14, 15, 18.
[12] Belterra's Ex. 18.
[13] Belterra's Ex. 20.
[14] Belterra's Exs. 21, 22.
[15] ECF No. 1. Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., and any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

under 11 U.S.C § 522 and listed the Field Brook Property as his exempt homestead.

On May 17, 2018, Belterra filed the instant Objection,[16] and on June 2, 2018, Debtor filed his response.[17]   On September 17, 2018, the Court conducted a one-day evidentiary hearing ("*Hearing*") to consider Belterra's Objection to Debtor's homestead designation.   At the Hearing, only two witnesses provided testimony for the Court in which it was conclusively demonstrated that Debtor has continuously lived on the Field Brook Property since 2007 and has paid expenses related to ownership of the Field Brook Property, even though Debtor transferred it to John and it is titled under John's name.[18] Belterra did not provide any evidence to the contrary.

### III.<u>CONCLUSIONS OF LAW</u>

**1.  Jurisdiction, Venue, and this Court's Constitutional Authority to Enter a Final Order**

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012-6.[19]   This is a core matter under § 157(b)(2), and this Court holds the constitutional authority under *Stern v. Marshall* to issue a final order.[20]   Finally, venue is governed by 28 U.S.C. §§ 1408, 1409.   Here, venue is proper.

**2.   Debtor Claimed a Valid Texas Homestead Exemption in the Field Brook Property**

---

[16] ECF No. 20.
[17] ECF No. 22.
[18] (Trial Min. 9/17/2018).
[19] *In re*: Order of Reference to Bankruptcy Judges, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[20] *Stern v. Marshall*, 564 U.S. 462 (2011); *see* 28 U.S.C. § 157(b)(2).

When a debtor files a voluntary petition for relief under the Bankruptcy Code, they may elect either state or federal law to exempt property from the estate.[21] "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."[22] Here, Debtor has elected Texas exemptions and listed the Field Brook Property as exempt.[23] When determining homestead exemption rights, bankruptcy courts must look to state law.[24] Therefore, this Court must look to Texas law to determine if Debtor may properly exempt the Field Brook Property.

This Court has previously held that a Texas homestead is "sacrosanct."[25] And this Court has recognized that "Texas law has, historically, provided and continues to provide very generous protections to the homestead."[26] In fact, "[h]omesteads are favorites of the law, and are liberally construed by Texas courts."[27] The Fifth Circuit has held that this liberal construction means that "we must uphold and enforce the Texas homestead laws even though in so doing we might unwittingly assist a dishonest debtor in wrongfully defeating his creditor."[28] And the Fifth Circuit has further noted—several times—that "Texas' constitutional and statutory protection of the homestead is absolute. The intent of the debtor is irrelevant to the scope of his homestead exemption under Texas law."[29]

---

[21] *In re Norra*, 421 B.R. 782, 788 (Bankr. S.D. Tex. 2009); 11 U.S.C. § 522.
[22] *Norris v. Thomas (In re Norris),* 413 F.3d 526, 527 (5th Cir.2005) (quoting *Owen,* 500 U.S. at 308, 111 S.Ct. 1833).
[23] 11 U.S.C. § 522(b)(3) and Const. art. 16 §§ 50, 51, Texas Prop. Code §§ 41.001-.002
[24] *In re Moody*, 862 F.2d 1194, 1201 (5th Cir.1989).
[25] *In re Montemayor*, 547 B.R. 684, 699 (Bankr. S.D. Tex. 2016).
[26] *Id.* at 695.
[27] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 316 (5th Cir. 2003).
[28] *In re Bradley*, 960 F.2d at 507 (citations and internal quotation marks omitted).
[29] *In re Hastings*, No. 97-40649, 1998 WL 526634, at *3 (5th Cir. July 23,1998) (quoting *In re Moody*, 862 F.2d at 1197-98) (internal quotation marks omitted).

In Texas, an individual who seeks homestead protection has the initial burden to establish the homestead character of her property.[30]  In order to meet this initial burden, a claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead.[31]  Claimant's initial burden is best described by a fellow Texas bankruptcy court:

> [M]ere ownership or possessory interest is not of itself sufficient to establish a homestead. The initial burden is typically a low hurdle and, in the usual case, mere evidence of overt acts of homestead usage in the form of possession and usage of the property as a homestead is sufficient. Thus, when a claimant actually resides at the property, a court generally does not need to investigate the second prong of intention to claim as a homestead, because actually residing on property is the most satisfactory and convincing evidence of intention.[32]

Once the claimant has met the burden of establishing a homestead exemption, the burden shifts to "the objecting party to prove that the homestead has ceased to exist."[33]

Because Debtor claims Field Brook Property as his homestead, this Court must first determine whether Debtor has met his initial burden.[34]  Here, Debtor has cleared this "low hurdle" because Debtor has continuously lived on the Field Brook Property since 2007.[35] Moreover, Debtor has demonstrated overt acts of homestead usage by paying for expenses related to the ownership of the Field Brook Property.[36]  As such, similar to the Court in *In re Brei*, this Court will not delve into whether Debtor has met the second prong of intention because Debtor actually residing at the Field Brook Property is satisfactory and convincing evidence of

---

[30] *In re Bradley*, 960 F.2d at 507; *see In re Montemayor*, 547 B.R. at 697.

[31] *In re Montemayor*, 547 B.R. at 697; *see In re Bradley*, 960 F.2d at 507; *In re Thaw*, 620 Fed.Appx. 304, 309 (5th Cir.2015).

[32] *In re Brei*, No. 18-03211, 2019 WL 1054770, at *7 (Bankr. N.D.Tex. Mar. 5, 2019) (internal quotations omitted).

[33] *In re Montemayor*, 547 B.R. at 697 (quoting *In re Crump*, 533 B.R. 567, 572 (Bankr.N.D.Tex.2015) (internal quotations omitted)).

[34] *In re Bradley*, 960 F.2d at 507.

[35] *In re Brei*, 2019 WL 1054770, at *7; (Trial Min. 9/17/2018).

[36] (Trial Min. 9/17/2018).

intention.[37]   And in light of the liberal construction required when "uphold[ing] and enforce[ing] the Texas homestead laws," this Court finds that Debtor has established the homestead character of the Field Brook Property."[38]   Therefore, the burden now shifts to Belterra to prove that Debtor's homestead at Field Brook Property "has ceased to exist."[39]

**3.   Belterra Failed to Meet the Shifted Burden that Debtor's Homestead in the Field Brook Property Ceased to Exist.**

Under settled Texas homestead law, "homestead rights may be lost only through death, abandonment or alienation."[40]   The Fifth Circuit has even noted that "[h]omestead status may be lost through alienation when the title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property."[41]   Here, Belterra argues that Debtor lost his homestead rights in the Field Brook Property when he transferred it to John via special warranty deed on January 19, 2012.[42]   In fact, there is no dispute that Debtor transferred the Field Brook Property to John.  Belterra argues that John unequivocally owns the Field Brook Property.  Belterra draws this Court's attention to the 55th District Court's orders stating as much, emphasizing that the Field Brook Property is held in custodia legis.[43]   Belterra's basic premise is that because John holds title in the Field Brook Property, Fettner, as receiver, now holds title, which means Debtor cannot properly claim his homestead exemption in the Field Brook Property.  Typically, Belterra would be correct, but Belterra misses important controlling Fifth Circuit precedent.

**4.   The Fifth Circuit's Decision in *In re Moody* Controls**

---

[37] *In re Brei*, 2019 WL 1054770, at *7.
[38] *In re Bradley*, 960 F.2d at 507.
[39] *In re Montemayor*, 547 B.R. at 697.
[40] *In re Perry*, 345 F.3d 303 at 310.
[41] *Id.* at 310 n.8 (citing *Resolution Trust Corp. v. Olivarez*, 29 F.3d 201, 207 (5th Cir. 1994).
[42] Belterra's Ex. 1.
[43] Belterra's Exs. 20,21.

In the Fifth Circuit, "the law is clear, as stated by *In re Matter of Moody*, 862 F.2d 1194 (5th Cir.1989), that a conveyance of a homestead that has been simulated to shield the homestead from creditors is void, and a void transfer cannot constitute an abandonment of homestead right."[44]  More specially, *In re Moody* states:

> Because creditors have no right of recovery against a debtor's homestead in the first instance, a conveyance of the homestead cannot be in fraud of their rights as creditors. Once again, a conveyance of homestead property that is not intended to pass title, and that is simulated to shield the homestead from creditors is void. Further, even where a grantor conveys property underlying his homestead by effective deed, if there is no abandonment of the homestead by the grantor occupant, the grantor's creditors cannot complain that the grantor has extinguished his homestead.[45]

Courts within the Fifth Circuit have followed *In re Moody* in similar situations.  For instance, in *In re Crump*, the court found that the debtors had transferred their claimed homestead to their children by gift deed, the children transferred the property back by gift deed within three months, and no real consideration had been given at any time.[46]  The court further found that debtors did not intend to pass title of the property to their children, and the evidence showed that the reason for the transaction was to protect their homestead.[47]  Thus, the court held that there was no alienation of the claimed homestead.[48]

Here, this Court is bound by *In re Moody*.  Like *In re Moody* and *In re Crump*, Debtor initially passed title of the Field Brook Property, his homestead, to John on January 19, 2012, for minimal consideration.[49]  In fact, the 55th District Court found that the conveyance to John was fraudulent, meaning that the purpose was of the transfer was to hinder Belterra's collection

---

[44] *Snyder v. Zayler*, 309 B.R. 272, 276 (E.D.Tex.,2004)(citing *In re Moody*, 862 F.2d at 1199).
[45] *In re Moody*, 862 F.2d at 1199.
[46] 533 B.R. 567, 575 (Bankr. N.D.Tex., 2015).
[47] *Id.*
[48] *Id.*
[49] Belterra's Ex. 1.

efforts.[50]   Moreover, at the Hearing, Belterra emphasized that the initial transaction of the Field

Brook Property to John was an active effort on behalf of Debtor to keep Belterra at bay.[51]   As

such, this Court finds that Debtor's initial conveyance of the Field Brook Property to John did

not intend to transfer title but merely shield it from Belterra's collection efforts.  Although this

Court does not condone Debtor's behavior, this Court "must uphold and enforce the Texas

homestead laws even though in so doing we might unwittingly assist a dishonest debtor in

wrongfully defeating his creditor."[52]   And the Fifth Circuit is clear that in Texas "a conveyance

of a homestead that has been simulated to shield the homestead from creditors is void, and a void

transfer cannot constitute an abandonment of homestead right."[53]   Therefore, following *In re*

*Moody*, this Court finds that Debtor is entitled to the claimed exemption in the Field Brook

Property.  As such, Debtor properly claimed his homestead and Belterra's objection must be

overruled.

## V. CONCLUSION

The Texas homestead is sacrosanct.  Construction of a debtor's homestead rights requires

liberal interpretation, even if that means wrongfully defeating a creditor.  Here, Debtor cleared

the "low hurdle" of his initial burden and demonstrated that the Field Brook Property was his

homestead because Debtor continuously resided at the Field Brook Property since 2007 and paid

expenses associated with the ownership of the property.  The burden to show that Debtor's

homestead had terminated then shifted to Belterra.  While Belterra put on evidence of alienation,

the law of the Fifth Circuit, *In re Moody*, was not on their side.  Specifically, in the Fifth Circuit

a transfer of homestead property intended to shield it from creditors is void, and void transfers do

---

[50] Belterra's Ex. 20.
[51] (Trial Min. 9/17/2018).
[52] *In re Bradley*, 960 F.2d at 507.
[53] *Snyder*, 309 B.R. at 276.

not affect the termination of homestead rights.  Therefore, because Debtor's transfer to John was intended to shield the Field Brook Property, it cannot terminate his homestead rights in the Field Brook Property.  As such, Debtor properly claimed his homestead and Belterra's objection is overruled. An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 06/06/2019.

Eduardo V. Rodriguez
United States Bankruptcy Judge